UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 3:13-CR-26-GFVT-REW-1 |
| | ) | No. 3:15-CV-91-GFVT-REW |
| v. | ) | |
| | ) | RECOMMENDED DISPOSTION |
| JASON ALLEN WARE, | ) | |
| | ) | |
| Defendant/Movant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Movant, Jason Allen Ware, is a federal inmate. DE #132 (Motion), at 10. On December 28, 2015, Ware filed a *pro se*[1] motion[2] under 28 U.S.C. § 2255. *See generally id.* The Court granted, on particular terms, the Government's motion to find waiver of attorney-client privilege. DE #140 (Order). The United States responded in opposition. DE #144 (Response). Although Ware had the opportunity to reply, DE ##134 (Order setting briefing schedule), 147 (Order technically denying motion to amend motion and granting additional time to file reply), he did not do so. The matter is ripe for consideration. Per normal practice, the District assigned the motion to the undersigned for a recommended disposition. The Court **RECOMMENDS** that the District Judge fully **DENY** § 2255 relief (DE #132) and issue **no** Certificate of Appealability.

---

[1] Pro se petitions receive a comparatively lenient construction by the Court. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a *pro se* habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation" toward encompassing an allegation stating "federal relief").

[2] While having previously deemed the motion largely compliant with Rule 2(b) and (c) of the Rules Governing Section 2255 Proceedings, *see* DE #134, the Court does note that the tendered motion is unverified.

# I.    BACKGROUND INFORMATION

On November 7, 2013, a grand jury indicted Ware, among others, on one count of conspiring to knowingly and intentionally distribute pills containing oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and three counts of possession with intent to distribute pills containing oxycodone, all in violation of 21 U.S.C. § 841(a)(1). DE #1 (Indictment). The conduct allegedly occurred in Franklin County between July 2011 and January 2012. *Id.* The grand jury later returned a superseding indictment. DE #62 (Superseding Indictment). Ware pleaded guilty to the conspiracy count in the original indictment, pursuant to a plea agreement, on July 22, 2014. DE ##98 (Minute Entry); 113 (Plea Agreement); 114 (Sealed Supplement). Judge Van Tatenhove sentenced Ware on January 20, 2015. DE #111 (Minute Entry). Movant received a total prison sentence of 96 months followed by 3 years of supervised release. DE #115 (Judgment). Following entry of judgment, Ware moved for a new trial, DE #118 (Motion), and for miscellaneous other relief, namely, appointment of counsel, tolling of the one-year period of limitation for filing a § 2255 motion to vacate, and release pending resolution of his motion for new trial. DE #119 (Motion). Judge Van Tatenhove denied both motions. DE #128 (Order). On December 28, 2015, Ware timely submitted a § 2255 motion to vacate. DE #132. The Government responded. DE #144. Ware did not reply but did file a motion to amend or correct his motion to vacate, DE #145 (Motion), which the Court denied, though accepting for consideration the tendered authority. DE #147 (Order). The motion stands ripe for review. The Court wholly rejects Movant's claims and recommends dismissal with no Certificate of Appealability. To the extent not barred procedurally, Ware's motion does not substantively warrant § 2255 relief.

2

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001))). A defendant alleging a constitutional basis must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on the proceedings" in order to obtain § 2255 relief. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1721-22 (1993)). When alleging a non-constitutional error, a defendant must prove that the error constituted a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 82 S. Ct. 468, 471 (1968)); *see also Watson*, 165 F.3d at 488. In making a § 2255 motion, a movant generally bears the burden of proving factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

### III.    ANALYSIS

In his § 2255 motion, Ware makes three interrelated arguments for relief, organized here as he presents them: (1) that the United States improperly withheld exculpatory and impeachment evidence in violation of *Brady v. Maryland*, 83 S. Ct. 1194 (1963) and Federal Rule of Criminal Procedure 16; (2) ineffective assistance of counsel relating to trial counsel's alleged failure to pursue, discover, and/or request potential *Brady* materials; and (3) that the guilty plea, including associated waivers of certain rights, was not knowing and voluntary in light of the Government withholding *Brady* evidence. Under this clear and conclusive record, no theory justifies relief under 28 U.S.C. § 2255. Ware's claims center entirely around the alleged failure of prosecutors to divulge evidence or information related to the federal indictment (charging various theft and corruption crimes) and subsequent guilty plea of former Franklin County Sheriff's deputy Matthew Brown, who was involved in the criminal investigation into Movant's conduct. While Brown's indictment and conviction on federal corruption charges may have provided impeachment evidence if Brown had testified at a trial, under the applicable law in this context, Ware's *Brady* and related ineffective assistance claims fail. *Brady* and the associated authority required no formal disclosure here, and Ware largely knew about Brown's public prosecution anyway. Ware has not demonstrated any impropriety as to his conviction. Further, Movant's guilty plea demonstrably was knowing and voluntary. Accordingly, the § 2255 motion fails.

A. Procedural Default

As an initial matter, the Court considers procedural default. The Government raised it. DE #144, at 2-4. "Section 2255 is not a substitute for a direct appeal, and thus a

4

defendant cannot use it to circumvent the direct appeal process." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Id.* Cause sufficient to excuse default ordinarily consists of "some objective factor external to the defense" that prevented Defendant from raising the issue on direct appeal, "not . . . whether counsel erred[.]" *Murray v. Carrier*, 106 S. Ct. 2639, 2645 (1986). The procedural default doctrine only bars "claims that could have been raised on direct appeal, but were not[.]" *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013).

Ware did not file a direct appeal. Accordingly, he defaulted the *Brady* claim and any challenge to the voluntariness of the guilty plea. *See Bousley v. United States*, 118 S. Ct. 1604, 1611 (1998) ("And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review.") He failed to assert these claims on direct appeal and thus may not argue them on habeas. The United States raised default, and Ware did not reply. Ware now does not show either good cause for default or prejudice, and he makes no showing of actual innocence. Ware alleges no external cause that prevented him from raising these issues, concerning matters central in the proceedings below, on appeal, and he makes no reference to (and thus does not satisfy) the prejudice prong. Further, Movant asserts no credible or supported claim of actual innocence. He offers no new evidence. He has not shown "that it is more likely than not that no reasonable juror would have convicted him in the light of . . . new

evidence." *Schlup v. Delo*, 115 S. Ct. 851, 867 (1995). "[C]hallenges to the weight or credibility of the evidence do not establish innocence[.]" *Goward v. United States*, 569 F. App'x 408, 411 (6th Cir. 2014). Accordingly, Ware procedurally defaulted these habeas claims. The procedural default doctrine does not bar his subsidiary ineffective assistance theory. In the interest of completeness, the Court will examine and address the merits of each claim.[3]

## B. Waiver of Appeal and Collateral Attack Right

The Government next argues that Ware's collateral attack waiver blocks merits consideration of his arguments. DE #144, at 4-7. Movant's plea agreement states, "Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence." DE #113, ¶ 6. At least other than "where a defendant argues that his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel[,]" "a defendant's informed and voluntary waiver of the right to collaterally attack a conviction and sentence is enforceable." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007) (enforcing appeal waiver); *see also United States v. McGilvery*, 403 F.3d 361, 363 (6th Cir. 2005) (same). *Acosta* distinguished "issues a defendant has validly agreed not to appeal or attack collaterally[] from those that go to the very validity of a guilty plea." 480 F.3d at 422; *see also United States v. Cole*, 599 F. App'x 236, 237 (6th Cir. 2015) (enforcing waiver but distinguishing cases alleging ineffective assistance of counsel); *but see Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) ("When a defendant knowingly, intelligently,

---

[3] The intersection of *Brady* with procedural default also encourages an alternative merits review, because (though Ware did not so argue) a meritorious *Brady* claim likely would parallel the showing required to excuse procedural default. *See Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006).

and voluntarily waives the right to collaterally attack his or her sentence, he or she is precluded from bring[ing] a claim of ineffective assistance of counsel based on 28 U.S.C. § 2255.").

Here, Ware acknowledged by executing the plea agreement that he had reviewed the full document with counsel and understood its terms. DE #113 (Plea Agreement), ¶ 12. At rearraignment, Ware confirmed to the Court, under oath, that he had read the plea agreement and understood its provisions. DE #135 (Rearraignment Transcript), at 10. He admitted to entering into the plea voluntarily. *Id.* at 10-11. Additionally, the Court asked if Ware had discussed with counsel and understood that he was "largely giv[ing] up [his] appeal rights in paragraph 6, [while maintaining] in a narrow circumstance some appeal rights." *Id.* at 22. Ware responded, "Yes." *Id.* Based on his responses and the responses of defense counsel, the Court found "the waiver of appeal as set forth in paragraph number 6 of [the] plea agreement is knowing, it's voluntary, and I think you understand the consequences of waiving those appeal rights." *Id.* at 22-23. The Court proceeds cautiously here. Judge Van Tatenhove expressly discussed the appeal waiver in paragraph 6 but did not mention the collateral attack waiver. Rule 11 does require, in the full plea colloquy, that the court "must inform the defendant of, and determine that the defendant understands . . . (N) the terms of any plea-agreement provision waiving the right . . . to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N). The colloquy may, by blanketing Ware's overall cognizance of plea terms, have been adequate.[4] Still, the Court is inclined against staking the § 2255 ruling on waiver in this circumstance.

---

[4] The prosecutor had referenced the full waiver in her summary. DE #135, at 14; *see also Tellado v. United States*, 745 F.3d 48, 53-54 (2d Cir. 2014) (holding not error when district court omitted specific reference to collateral attack waiver in its Rule 11 colloquy after Government referenced collateral attack waiver in its review of agreement, stating:

Further, in the § 2255 motion, Ware also attacks the validity of the plea agreement, including and in particular any waiver. DE #132, at 9 ("Ware's plea agreement waiver is not enforceable[.]"). One claim categorically centers on ineffective assistance, which the plea agreement expressly exempts from the collateral attack waiver. The Court does elect to assess all merits and not premise dismissal on a collateral attack waiver. Ultimately, the waiver issue is not critical or determinative because Ware's substantive arguments easily fail.

C. The Government's Alleged Withholding of *Brady* Information

Ware primarily alleges that the United States "withheld exculpatory and impeachment evidence in violation of FRCrimP 16(c), Brady v. Maryland, 373 US 83 (1963), and Youngblood v. West Virginia, 547 US 867 (2006)." DE #132, at 6 (all as in original). The alleged *Brady* violation centers on former Franklin County Sheriff's Deputy Matthew Brown, a county law enforcement officer involved in the investigation of Ware's criminal conduct. In the motion, Ware offers a wide-ranging account regarding Brown's alleged and substantiated misconduct, which ultimately led to a federal indictment and conviction. *See id.* at 3-5, 7-8; *United States v. Matthew Christian Brown*, No. 3:14-CR-8-GFVT (E.D. Ky.). Here, Ware specifically alleges:

> At the time of Brown's sealed indictment on 06 March 2014, and arrest by FBI agents on 07 March 2014, Ware was still within his federal pretrial period, yet again the United States refused to disclose material exculpatory and damning impeachment evidence so motions to suppress and dismiss could be filed, and trial properly strategized to capitalize on Detective Brown's abhorrent patterns of criminal misconduct.
>
> At the time of Brown's Superseding Indictment on 01 July 2014, Ware was STILL in his pre-trial period, and again could have filed motions (and

---

"[T]he district court's omission of the phrase 'collateral attack' in *its own* explanation of the rights Tellado was relinquishing does not, under these facts, constitute plain error.").

prepared for trial) if the United States had properly disclosed Brown's criminal misconduct as legally required.

Last, Ware pled guilty on 22 July 2014, but was not sentenced until 20 January 2015. During that sixth month period, if the United States had performed its continuing constitutional duty and disclosed that Brown (1) pled guilty on 04 November 2014, AND (2) had his bond revoked for new felony criminal misconduct on 21 November 2014, Ware could have moved the Court to withdraw his plea BEFORE sentencing under Rule 11(d)(2)(B)("a fair and just reason").

DE #132, at 8 (all as in original). Ware's claim completely lacks merit in this context.

In order to show a *Brady* violation, Ware must prove that (1) evidence was favorable to him, because it was either exculpatory or impeaching, (2) the government suppressed the evidence, either willfully or inadvertently, and (3) he was prejudiced by the nondisclosure. *Stickler v. Greene*, 119 S. Ct. 1936, 1948 (1999). *Brady* "is concerned only with cases in which the government possesses information which the defendant does not, and the government's failure to disclose the information deprives the defendant of a fair trial." *United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994). Importantly in the context of Ware's claim, "[t]here is no *Brady* violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question, or if the information available to him was available from another source." *United States v. Tavera*, 719 F.3d 705, 716 (6th Cir. 2013) (quoting *Jones v. Bagley*, 696 F.3d 475, 487 (6th Cir. 2012); *see also Doan v. Carter*, 548 F.3d 449, 460 (6th Cir. 2008) (holding that failure to disclose potentially impeaching information known to defense counsel "cannot form the basis of a *Brady* violation"). Information "available from another source" includes "information that is available from public records, e.g., of a witness's criminal record." *Gillispie v. Timmerman-Cooper*, 835 F.

Supp. 2d 482, 507 (S.D. Ohio 2011) (citing *Storey v. Vasbinder*, 657 F.3d 372, 380 (6th Cir. 2011)).

Further, in the context of a guilty plea, *Brady* "does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United State v. Ruiz*, 122 S. Ct. 2450, 2457 (2002). *Brady* rights serve a part of the Constitution's basic "fair trial" guarantee; therefore "[w]hen a defendant pleads guilty he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees." *Id.* at 2454-55. As such, disclosure of material impeachment information is more appropriately described as "special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary* ('knowing,' 'intelligent,' and 'sufficient[ly] aware')." *Id.*

Here, Ware's *Brady* argument fails for multiple reasons. First, the information related to Brown's misconduct, particularly the federal indictment, guilty plea proceeding, and conviction, was publicly available on the docket of this Court. As such, the Government had no duty to disclose the materials. *See Storey*, 657 F.3d at 380 (*Brady* disclosure requirement does not apply to witness testimony from other cases because available from public records); *Bell v. Bell*, 512 F.3d 223, 235 (6th Cir. 2008) (sentencing records of witness publicly available and not subject to *Brady* disclosure). Ware's argument that "[n]o amount of public notoriety in the press [or other public availability of the information] when Ware was incarcerated (several hours away) may serve to relieve the United States of its continuing duty to disclose" is contrary to established law.[5] *See* DE #132, at 9.

---

[5] Further, the § 2255 motion itself demonstrates Ware's ability to access the publicly available documents. Ware cites to various documents, including the indictment,

Second, Ware had personal knowledge of Brown's alleged misconduct, or at least a variant of it, prior to the grand jury's indictment of Brown. On February 26, 2014, Ware and his trial counsel, Theodore Shouse, met with Kentucky State Police officers and federal prosecutors as part of the public corruption investigation into Brown. DE #144-2 (Nathan Moore Affidavit), at 2. "During the meeting, [Ware] provided information related to purported illegal activities of Matt Brown involving theft and corruption." *Id.* According to Ware, Brown had extorted a relative and stolen cash, jewelry, and drugs from various other associates in conjunction with his formal duties as a Sheriff's deputy. *Id.* at 2-3. The shared information "was consistent with information previously provided by other persons with information against Brown." *Id.* Ware acknowledges this meeting occurred and that he had and related information regarding certain misconduct by Brown. DE #132, at 9 (Ware describes the discussion as involving "Brown's blatant attempt at a kickback scheme, with Detective Brown offering not to prosecute Ware in exchange for payments from Ware of $2,500.00 per month."). Ware's personal knowledge of instances of Brown's alleged official misconduct and the Government's criminal investigation demonstrates that Ware "knew or should have known the essential facts permitting him to take advantage of [*Brady*] information." *Mullins*, 22 F.3d at 1371 (quoting *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991)). Prosecutors had no *Brady*-related duty to disclose consequent information as Ware already had "essential facts" necessary to utilize Brown's involvement in the investigation as part of defensive strategy.

---

superseding indictment, and plea proceedings, found on the docket in *United States v. Matthew Christian Brown* to support the litany of misconduct allegations he levies against Brown. *See* DE #132, at 3-5. The Court notes that Ware was still on bond in his case until late April 2014, well after Brown's indictment and public arraignment.

Finally, and most definitively, *Ruiz*[6] forecloses any argument that prosecutors were required to disclose impeachment materials regarding Brown prior to Ware pleading guilty. Evidence of Brown's misconduct is properly categorized as impeachment evidence. Ware's repeated and conclusory attempts to paint the information as exculpatory are unsupported by the record. *See* DE #132, at 7 ("Both the evidence against Brown, and Brown's conviction itself, are material because they show a strong exculpatory connection between Brown's criminal misconduct and the facts of Ware's case that were presented in his plea agreement[.] . . . Knowing what we do about Detective Brown now, this newly discovered evidence strongly demonstrates that critical

---

[6]    The Court finds any possible distinction, as to *Ruiz*, between impeachment and exculpatory evidence problematic for several reasons. On the law, the constitutional disclosure underpinning blankets exculpatory evidence, of which impeachment evidence is really a defined subset. *See United States v. Bagley*, 105 S. Ct. 3375, 3379–80 (1985) (discussing *Brady*'s due process origin and remarking: "In the present case, the prosecutor failed to disclose evidence that the defense might have used to impeach the Government's witnesses by showing bias or interest. Impeachment evidence, however, as well as exculpatory evidence, falls within the *Brady* rule."); *United States v. Noel*, No. 3:09cr186-03, 2009 WL 2767650, at *2 (E.D. Va. Aug. 24, 2009) ("Because *Giglio* material is simply a subset of *Brady* material, the disclosure of *Giglio* material is subject to the same analytical structure as exculpatory evidence."). Further, "courts generally do not distinguish between impeachment and exculpatory information for *Brady* purposes." *Lee v. Lucas*, No. 1:10 cv 00151, 2013 WL 5670930, at *15 (N.D. Ohio Oct. 15, 2013). Even pre-*Ruiz*, the Sixth Circuit rejected pre-plea nondisclosure as a basis for invalidating a guilty plea where the record established that the plea was knowing, voluntary, and supported by a factual basis. *See Campbell v. Marshall*, 769 F.2d 314, 318 (6th Cir. 1985) (upholding plea validity despite failure to disclose substantive *Brady* evidence pre-plea); *United States v. Martin*, No. 1:06-CR-271, 2009 WL 2167924, at *6 (N.D. Ohio July 21, 2009) (discussing *Campbell*'s pre-*Ruiz* analysis and stating: "Central to the court's decision was its finding that a factual basis for the plea had been established at the plea proceeding, and that the discovery of new information did not in any way detract from that factual basis.").

    Here, Ware does not allege the suppression of evidence demonstrating or suggesting actual innocence or true exculpation. While the Brown proof would have hurt Brown's credibility as (and if) a witness, Ware offers nothing to establish that the case in any way turned on that credibility, as opposed to the objective controlled buy and seized contraband evidence, all of which Ware admitted under oath during the plea. The Court sees *Ruiz* as plainly controlling and determinative of Ware's request for relief.

evidence against Ware was very likely false[.]"); *id.* ("The Government simply cannot proceed to trial where the sole Government witness and case agent has zero integrity as a human being—and is in fact in federal prison himself."). None of the information regarding Brown's misconduct cited by Ware and forming the basis for Brown's federal prosecution involved the actual investigation into Ware.[7] Ware does not support the contention that Brown was the sole Government witness against him. The Government directly contradicts this assertion. DE #144, at 9 ("Other officers were present during the controlled purchases, there were audio recordings of the transactions and the confidential informant that made the purchases was also available to testify against Ware."). The Government does not dispute that Ware could have impeached Brown based on his misconduct if called as a witness, but the United States disclaims any intent or need to use Brown as a witness.

Again, the Court must note that Ware faced charges supported by objective proof—controlled and recorded oxycodone buys involving an informant, which led to a state warrant and seizure of hundreds of oxycodone pills. Brown was part of the investigative process, but Ware does not (and could not successfully) contend that Brown's credibility was central to the core prosecution proof. The United States could have tried Ware without any reliance on Brown, and Ware does not establish that Brown's misdeeds would in any way have exculpated him.[8]

---

[7] Ware alleged that Brown stole $800 in cash during a search of Ware's residence, which was never accounted for in the official search warrant inventory. DE #132, at 1. Ware also alleged that Brown failed to account for weapons and electronic devices seized during the same search. DE #144-2, at 3. According to KSP Officer Moore, a review of the evidence logs indicated that all items seized during the search were properly inventoried and documented. *Id.*

[8] *Ruiz* undoubtedly exempted impeachment evidence from pre-plea disclosure requirements, as a constitutional matter. *Robertson v. Lucas*, 753 F.3d 606, 621 (6th Cir.

In sum, the Government did not violate *Brady*.[9] Ware possessed information regarding Brown's misconduct and involvement in the investigation, subsequent information was publicly and contemporaneously available, and prosecutors were not constitutionally required to disclose impeachment information prior to Ware entering a guilty plea. Accordingly, Ware's claim wholly fails.[10]

---

2014) ("*Ruiz* established that *impeachment* material need only be disclosed for trial."). Several courts have treated *Ruiz* as covering all *Brady* evidence. *See, e.g.*, *Witherspoon v. Prelesnik*, No. 13-CV-13295, 2015 WL 4612021, at *6 (E.D. Mich. July 31, 2015) ("Several courts have concluded that there is no clearly established federal Constitutional right to the disclosure of *Brady* material prior to the entry of a guilty plea, without regard to whether the material is exculpatory or impeachment evidence."); *see also* 6 Wayne R. LaFave et al., *Criminal Procedure* § 24.3(b) (4th ed. 2015) (citing and cataloguing cases that extend *Ruiz* to both impeachment and exculpatory evidence and cases that limit *Ruiz* to impeachment evidence only).

[9] Rule 16 regulates discovery in criminal matters, and Judge Van Tatenhove's pretrial management order expressly addresses *Brady* materials. *See* DE #15-1, ¶ 4. The general timing requirement for *Brady* materials not within 16(a)(1) is disclosure in time for effective use at trial. *Id.* ¶ 4(b).

[10] In the previously denied motion to amend (DE #145), Ware cites *United States v. Fisher*, 711 F.3d 460 (4th Cir. 2013), and argues that "the facts in *Fisher* are identical to the facts in this matter." DE #145, at 1. Ware's reliance on *Fisher* is misplaced. *Fisher* is clearly distinguishable. In *Fisher*, defendant moved to vacate his guilty plea where the government had not disclosed certain misconduct by a law enforcement officer responsible for the investigation leading to defendant's arrest. 711 F.3d at 462. Specifically, the officer pleaded guilty to "having defrauded the justice system" and "admitted to having lied in his sworn affidavit that underpinned the search warrant for the defendant's residence and vehicle, where evidence forming the basis of the charge to which the defendant pled guilty was found." *Id.* The court found that "the officer's affirmative misrepresentation, which informed the defendant's decision to plead guilty and tinged the entire proceeding, rendered the defendant's plea involuntary and violated his due process rights." *Id.* Here, Brown's misconduct did not directly involve the investigation into Ware. Unlike the *Fisher* officer, Brown did not create or falsify evidence in the Ware investigative chain. His wrongs did not go "to the heart of the prosecution's case." *Id.* at 466. Ware alleges no "blatant misrepresentation" by Brown that would undercut his plea. *Id.* at 465-67 (discussing *Brady v. United States*, 90 S. Ct. 1463, 1473 (1970)). *Fisher* has surface similarities, but Brown's comparative role, and the comparative misconduct, distinguish this case from *Fisher*.

D. Ineffective Assistance of Trial Counsel

Ware next and derivatively alleges that "since Ware's counsel also knew of the federal criminal investigation into Detective Brown, he was arguably ineffective for failing to follow-up with the USAO following Ware's interview [with prosecutors investigating Brown's misconduct], or independently researching Detective Brown's status." DE #132, at 9. He argues that he "was thus prejudiced by counsel's failure because had he known the Government's case agent was criminally corrupt—from the United States or his own attorney—Ware absolutely would have proceeded to trial." *Id.*

When asserting an ineffective assistance claim, a movant must prove both deficient performance and prejudice. *Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984); *Campbell v. Bradshaw*, 674 F.3d 578, 586 (6th Cir. 2012); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. A movant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 2064-65. Judicial scrutiny of counsel's performance, however, is "highly deferential," featuring a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose

result is reliable." *Id.* at 2064. In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 2069. "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012).[11]

Regrettably, counsel's posture as to the Brown information is not in the record, and Ware's version of the facts is unsworn. Even assuming, though, that Shouse only knew what happened at the proffer, Ware still has not established a constitutional deficiency. The defense knew Brown had engaged in illegality and impropriety as a matter of Ware's personal knowledge. The defense knew the United States was investigating criminality. Further, Shouse also knew how Brown fit into the Ware prosecution and that the possibility of impeaching Brown would be no panacea as to the objective trafficking proof Ware faced. Counselling a plea instead of pinning a defense on the possibility of cross-examining Brown at trial was surely defensible lawyer strategy.

Additionally, Ware cannot establish prejudice. "[I]n order to satisfy the 'prejudice' requirement [in the guilty plea context], the [movant] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 106 S. Ct. 366, 370-71

---

[11] *Lafler* was a § 2254 case, but the analysis also applies to a § 2255 *Strickland* theory. *See Winkler v. United States*, Nos. 3:08-cr-014, 3:10-cv-210, 2013 WL 4494971, at *2 (E.D. Tenn. Aug. 20, 2013) (A § 2254 case's "reasoning, nevertheless, applies to cases filed by federal prisoners under 28 U.S.C. § 2255 because §§ 2254 and 2255 are counterparts of each other and the law applicable to one generally applies to the other.").

(1985). "Moreover, to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010) (citations omitted). "[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial . . . will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill*, 106 S. Ct. at 370-71.

Ware argues that the additional information of Brown's indictment and guilty plea would have caused him to "absolutely" proceed to trial. This suggestion is speculative at best. As the Court discussed above, even absent knowledge of Brown's indictment, Ware directly and personally knew of Brown's misconduct and the Government's corruption investigation. Ware does not identify how the additional information would realistically have changed his decision to plea guilty. Further, Ware has failed to establish that, armed with the additional evidence of Brown's indictment, if obtained by counsel, he would have forgone the benefits of the plea agreement and instead proceeded to trial. Per the plea agreement and rearraignment colloquy, *see infra* Section E, the Government had substantial evidence linking Ware to the distribution of oxycodone. Additionally, Ware had no way of knowing whether the United States would even call Brown as a witness at his trial. Finally, nothing in the record supports that a decision to reject the plea agreement, based solely on the additional information of an indictment return, would have been rational. Ware has not shown, or even really argued, that he was prejudiced in any way by the alleged ineffective assistance. Accordingly, his claim fails.

17

E. Validity of Plea

Lastly, Ware alleges that his guilty plea was not knowingly and voluntarily made due to the failure of the United States to disclose previously discussed information regarding Brown. DE #132, at 9. In relevant part, Ware states: "Here, Ware's plea agreement—including its waiver—could not have been entered knowingly and voluntarily because the United States maliciously refused to disclose material exculpatory and impeachment evidence regarding the criminal misconduct of Detective Matt Brown." *Id.* Ware offers no further proof of the alleged invalidity of his guilty plea beyond his earlier arguments regarding the Government's alleged withholding of *Brady* evidence.

As discussed above, *Ruiz* does not obligate the Government to disclose material impeachment information prior to entering a plea agreement with a criminal defendant. 122 S. Ct. at 2457. The Supreme Court explained: "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it." *Id.* at 2455. With regard to impeachment information, the Court stated: "It is particularly difficult to characterize impeachment information as critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant. The degree of help that impeachment information can provide will depend upon the defendant's own independent knowledge of the prosecution's potential case—a matter that the Constitution does not require prosecutors to disclose." *Id.* at 2455-56. Thus, even assuming the Government was required to provide the impeachment evidence sought by Ware concerning Brown's

18

misconduct at some point prior to *trial*, the fact that prosecutors did not disclose such information prior to Ware entering a guilty plea does not, standing alone, invalidate the plea. Further, and as mentioned above, Ware had direct knowledge of Brown's alleged misconduct at the time of entering the plea, notwithstanding his alleged lack of knowledge regarding the indictment and formal prosecution.

Finally, Judge Van Tatenhove has previously found, based on an extended colloquy, that Ware's plea was knowing and voluntary. DE #135, at 25 ("Well, I'm satisfied with the responses given to me by the defendant. . . . I think [he is] fully competent and capable of entering an informed plea. I think it's knowing and voluntary and it's supported by [an] independent basis in fact that contains the essential elements of the crime charged."). Defendant affirmatively admitted his crime and pleaded guilty. *Id.* at 24 ("Me and a few other people went to Florida, seen a pain clinic, we was prescribed pain pills, Percocet 30s and 15 milligrams, and then we would bring them back to Frankfort to distribute."), 25 ("[H]ow do you plead as to Count 1 as set forth in the indictment, guilty or not guilty?" "Guilty."). Further, the plea agreement, signed by Ware, provides, "The Defendant . . . understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary." DE #113, ¶ 12. In signing the plea agreement, Ware admitted to certain facts establishing his involvement in and coordination of the illegal distribution of pain pills and his specific involvement in at least two controlled purchases arranged by law enforcement. *Id.* ¶ 3. The United States reviewed the contents of the agreement in open court, and Defendant stated under oath that the summary was consistent with his understanding of the agreement. DE #135, at 14. Judge Van

Tatenhove clearly reviewed the rights associated with trial that Ware would waive as a result of a guilty plea, including the right to confront and cross-examine witnesses. *Id.* at 15-16.

Judge Van Tatenhove ensured clear comprehension by Ware of the waiver of rights inherent in any guilty plea. He further ensured Ware was competent, acknowledged that a sufficient factual basis existed for the plea, and understood the potential punishment to follow. Nothing Ware alleges in the § 2255 motion invalidates the factual basis for the plea or calls into question his understanding of the consequences of waiving the variety of trial rights implicated by the plea. He validly entered the plea.

To the extent Ware suggests (via, *e.g.*, the tendered *Fisher* case[12]) a due process failure, the Court rejects the premise. Ware in no way proves the type of misleading or blatantly improper behavior that would erode plea validity under *Brady v. United States*, 90 S. Ct. 1463, 1473 (1970). The prosecution's failure to provide potential impeachment evidence—evidence already of record publicly and largely in Ware's ken anyway—simply raises no constitutional fault as to his guilty plea.[13]

---

[12] *Fisher* has drawn criticism as an outlier. *See United States v. Rains*, Nos. 1:06-cr-00035-MP-GRJ-2, 1:11-cv-00100-MP-GRJ, 2015 WL 4647292, at *7 (N.D. Fla. Aug. 5, 2015) ("[T]he persuasiveness of *Fisher* is questionable in that, according to this Court's research, no other circuit has adopted *Fisher*'s expansive holding and one district court has even questioned whether the opinion was decided correctly.").

[13] A misconduct-based effort to rescind a guilty plea as involuntary faces a high bar:

> To prevail on this kind of claim, a convicted defendant who asserts a right to rescind his guilty plea because of newly discovered government misconduct must make two showings. First, he must show that some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea. Second, he must show that the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice.

F. Evidentiary Hearing

Ware requests an evidentiary hearing. DE #132, at 10. The Court must hold an evidentiary hearing unless "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No hearing is necessary "where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)) (internal quotation marks removed). Ware's claims do not warrant a hearing; the § 2255 motion filings and case record conclusively show, for the reasons stated above, that Ware's claims fail. There are no contested factual issues that justify a hearing. The record, which needs no further development and raises no factual issues of consequence to the motion, forecloses relief.[14]

---

*Wilkins v. United States*, 754 F.3d 24, 28 (1st Cir. 2014) (citations omitted). Ware does not invoke or approach this standard. He provided a valid factual basis for his plea under oath, during a searching colloquy by Judge Van Tatenhove. The allegedly suppressed evidence would at most have raised questions about the credibility of an investigative player; that evidence would not have raised doubt about the case evidence against Ware leading to the guilty plea. As with the defendant in *Wilkins*, who faced a mass of objective and inculpatory proof, the evidence complained of in the § 2255 context would not lead to plea relief.

[14] Further, to the extent Ware requests appointment of counsel, *see* DE #132, at 10 ("In the alternative . . . Ware moves this Court to appoint him counsel [and] order counsel to independently investigate the record and assess if an amended 2255 motion should be filed[.]"), the Court denies the request. The United States Constitution provides no right to counsel in collateral proceedings. *See, e.g.*, *Oliver v. United States*, 961 F.2d 1339, 1343 (7th Cir. 1992); *Abdus-Samad v. Bell*, 420 F.3d 614, 632 (6th Cir. 2005); *United States v. Pought*, No. 11-CR-20449, 2015 WL 7307971, at *14 (E.D. Mich. Nov. 20, 2015); *United States v. Edkins*, No. 1:05-CR-151, 2013 WL 542473, at *6 (W.D. Mich. Feb. 12, 2013). The appointment of counsel in § 2255 proceedings is firmly a matter in the Court's discretion. "In all proceedings brought under [§ 2255], and any subsequent proceedings on review, the court may appoint counsel." 28 U.S.C. § 2255(g). Further, when "the court determines that the interests of justice so require, representation may be provided for any financially eligible person who is seeking relief under section . . . 2255." 18 U.S.C. § 3006A(a)(2)(B); *see also United States v. Baker*, 586 F. App'x 458, 460

## IV.    CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissal on procedural grounds, as to when a Certificate of Appealability should issue, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S. Ct. at 1604. Movant has not made a "substantial showing" as to any claimed denial of rights; his *Brady*, *Strickland*, and due process claims conclusively fail. Reasonable jurists would not find the Court's determinations, as to procedure and substance, debatable. Accordingly, the Court recommends that the District Court entirely deny a Certificate of Appealability.

---

(10th Cir. 2014) (collecting cases and noting that a court may decline to appoint counsel "when the issues raised are not unusually complex either legally or factually, and when the merits do not appear colorable"). Aside from a request that an attorney "independently investigate" his claims, Ware does not state any particular reason he seeks counsel at this stage. The claims, as discussed above, are not unusually complex and are plainly unfounded in law and fact. Pursuant to the Court's recommendation that Ware's §2255 motion be denied altogether, the Court also declines to appoint counsel. The case, which is facially developed and analytically clear, does not merit such an appointment. Ware adequately presented his arguments, meritless though they are, *pro se*.

## V.    RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the District Judge wholly **DENY** § 2255 relief (DE #132) and grant **no** Certificate of Appealability.

\*    \*    \*    \*    \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 26th day of July, 2016.

Signed By:

**_Robert E. Wier_**

**United States Magistrate Judge**

23